Calvin Ray **PERKINS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–95–165–CR.

Court of Appeals of Texas,
Waco.

May 18, 2000.

---

John C. Vance, Criminal Dist. Atty., John R. Rolater, Jr., Asst. Dist. Atty., Dallas, for appellant.

John G. Tatum, Richardson, for appellee.

Before Chief Justice VANCE, Justice GRAY, and Chief Justice McDONALD (Retired).

## OPINION ON RECONSIDERATION AFTER PETITION FOR DISCRETIONARY REVIEW

TOM GRAY, Justice.

We initially reversed Calvin Perkins' driving while intoxicated conviction because we concluded that the evidence was factually insufficient to support the trial court's finding of guilt. *Perkins v. State*, 940 S.W.2d 365 (Tex.App.—Waco 1997), *rev'd*, 993 S.W.2d 116 (Tex.Crim.App.1999). The Court of Criminal Appeals vacated our decision and remanded this cause to us for reconsideration of Perkins' factual sufficiency challenge in light of *Cain v. State*. *Perkins v. State*, 993 S.W.2d 116 (Tex. Crim.App.1999); *Cain v. State*, 958 S.W.2d 404 (Tex.Crim.App.1997). On reconsideration, we will overrule his point and affirm the conviction.

### *How we review a factual sufficiency challenge to the evidence*

When conducting a review of the factual sufficiency of the evidence, we recognize that the State bears the burden of proof beyond a reasonable doubt and apply the "complete and correct" standard of

review set out by the Court of Criminal Appeals in *Johnson v. State,* —— S.W.3d ——, ——, No.1915–98, 2000 WL 140257, *8 (Tex.Crim.App.2000). This court "asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [the fact finder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.; see also Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996).

■ Our review begins with the assumption that the evidence is legally sufficient. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We are not free to re-weigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *Cain,* 958 S.W.2d at 407; *Clewis,* 922 S.W.2d at 135. Nor may we reverse a decision simply because we disagree with the result. We must defer to the fact finder's findings and may find the evidence factually insufficient only where necessary to prevent a manifest injustice. *Cain,* 958 S.W.2d at 407.

■ Additionally, we must review all of the evidence. *Id.* at 408; *Clewis,* 922 S.W.2d at 129. The review is the same for circumstantial evidence as it is for direct evidence. *See Geesa v. State,* 820 S.W.2d 154, 158–59 (Tex.Crim.App.1991); *Reeves v. State,* 969 S.W.2d 471, 478 (Tex.App.— Waco 1998, pet. ref'd). We must consider the evidence as a whole, not viewing it in the light most favorable to either party. *Cain,* 958 S.W.2d at 408. A decision is not manifestly unjust as to the accused merely because the fact finder resolved conflicting views of the evidence in favor of the State. *Id.* at 410. Thus, as the reviewing court, we view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *Cain,* 958 S.W.2d at 408; *Clewis,* 922 S.W.2d at 129.

### What the evidence shows

■ The evidence presented at trial establishes that late in the evening of April 2, 1994, an unknown caller informed the authorities that "someone was unconscious in the middle of the road" in their car on Military Parkway. Dallas firefighter James Farrel was dispatched from downtown to investigate the situation. Farrel went to the 8000 block of Military Parkway with his siren and emergency lights activated. When he arrived at the scene, he found a car straddling the middle of two eastbound lanes.

According to Farrel, when he approached the car, its engine was running and it was in gear. Perkins was passed out in the front seat with his foot on the brake. Neither the siren nor the emergency lights woke Perkins, so Farrel made sure Perkins was breathing and had a pulse, and put the car in park and took the keys out of the ignition to prevent him from leaving the scene. The firefighter smelled the odor of alcoholic beverages on Perkins and saw several beer cans in the back seat. Perkins did not wake up during any of Farrel's actions in securing the car.

Dallas police were summoned to the scene by the firefighters. As the police arrived, Perkins woke up and got out of the car. Firefighter Farrel, before he left the scene, saw Perkins get out of his car and begin to talk to Officer Mark Johnson, the responding police officer. Farrel testified that Perkins' "speech was kinda slurred [and Perkins] seemed a little whoozy." Farrel believed that Perkins was intoxicated. After giving a report to Officer Johnson, Farrel and the other firefighters left the scene.

Johnson testified that as he began talking to Perkins, he "noticed the strong smell of alcohol on his breath [and that Perkins] was unable to stand still in one position for very long before he would begin to fall or weave to one direction, and [would] have to step that way to compensate for his loss of balance." At Perkins'

attorneys' request, Johnson demonstrated for the trial court the extent to which Perkins was weaving and moving in his attempts to remain standing. Perkins attempted to recite the alphabet at Johnson's request, but incorrectly did so by ending in "TUZ." Perkins told Johnson that he was unable to count backwards from 38 to 22. Although it was shortly after 11:00 p.m., Perkins told Johnson that he thought it was 2:00 a.m. or 3:00 a.m. Johnson did not recall seeing any beer cans in Perkins car that night and did not produce any pictures or an inventory of Perkins' car that showed that beer cans were found in it. Johnson determined that Perkins was intoxicated and arrested him for the offense. At the police station, Perkins refused to submit to either a breath or a blood test of his blood alcohol level.

The State also presented a video tape of Perkins at the police station. On the video tape, Perkins is cooperative with the officers, speaks clearly but deliberately, and is able to follow directions. He recites the alphabet without error and counts backwards from 38 to 22 with only one error. Although Perkins does sway some, he does not stumble, fall down or appear to be off-balance.

Other evidence opposes Farrel's and Johnson's testimony. First, Emil Thompson, Perkins' friend of thirty-four years, testified that he was with Perkins earlier in the day from around 5:00 p.m. to around 9:45 p.m. At first, Thompson and Perkins were at a recreation center, involved in organizing and running a show for children. When the concert ended a little after 9:00, Thompson and Perkins went to a carwash to clean out their cars. There, Perkins drank one beer. Thompson brought the beer with him. Thompson knew that Perkins had taken some anti-allergy medication that normally caused Perkins to "go straight home." According to Thompson, when he parted company with Perkins around 9:45 p.m. Perkins was not intoxicated. Perkins could have been "a little impaired" as a result of the allergy medication and the one beer he had drunk, but Perkins was not "whoozy" or off balance.

Perkins also testified in his own defense. From around 8:00 a.m. to 9:00 p.m., he was involved in putting on a talent show for some children at a local recreation center. After the show ended, Perkins met Thompson and some other friends at a carwash. While he was there, Perkins drank one beer that Thompson had brought. Perkins washed and detailed his car and left the carwash a little after 10:00 p.m. From the carwash, Perkins headed to another friends house to pick up some items. Unfortunately, he could not find his friend's house and drove around the Military Parkway area for fifteen to twenty minutes looking for the street on which his friend lived. When he was unable to locate the street, he pulled his car into a side road and tried to find the street on his map. Because the dome light in his car did not work, he was required to lean over into the passenger seat area to put the map into the only working light in the car. Perkins claimed that he was not blocking traffic where he stopped his car.

While Perkins was leaning over looking at his map, a fireman tapped on his window. The fireman told him that somebody had called and said that there was a person passed out in a car on Military Parkway. Perkins told the firefighter that he was trying to read his map and that he had not been drinking. The firefighter took the keys from Perkins' car and told him that the police had been summoned. Rather than contest the firefighter's action, Perkins waited for the police because he expected that the police would look for him if he left.

When the police arrived, Perkins told the officer that he had drank one beer that evening and had taken some medication. According to Perkins, he performed several sobriety tests at the scene, including ones in which he was required to lean back and touch his nose, walk a straight line, and count backwards from 30 to 15. Al-

though Perkins did fine on the sobriety tests, he admitted to the officer that he had an outstanding warrant. When the police arrested him, Perkins believed that it was for the warrant. It was not until he was at the police station that he realized that he was under arrest for DWI.

Perkins denied that there were any beer cans in his car. He also denied that he was intoxicated or in anyway impaired. He was unable to explain why Farrel and Johnson would testify to facts that were not true. He also conceded that he had been convicted of two DWI's before, including one in which he had fallen asleep at a stoplight after drinking at a party.

### Conclusion

We have throughly reviewed the evidence presented during the trial. Standing alone, we cannot say that the proof of guilt is so obviously weak as to undermine confidence in the trial court's determination that Perkins was intoxicated. *Johnson*, No.1915–98 —— S.W.2d ——, ——, 2000 WL 140257, *8 Although a closer question, given the objective evidence contained in the video tape of Perkins at the police station a short time after his arrest, we cannot find that the proof of guilt is greatly outweighed by the contrary proof either. *Id.* Therefore, we conclude that the evidence is factually sufficient to support the judgment. Perkins' second point of error is overruled.

The judgment is affirmed.

Chief Justice McDONALD (Retired), dissents.

FRANK G. McDONALD, Chief Justice (Retired), dissenting on reconsideration after petition for discretionary review.

For the reason expressed in my initial opinion, I continue to believe that the evidence is factually insufficient to sustain the conviction. *Perkins v. State*, 940 S.W.2d 365 (Tex. App.—Waco 1997), *rev'd* 993 S.W.2d 116 (Tex. Crim. App. 1999). I do not believe that the principles set out in

either *Johnson v. State*, —— S.W.3d ——, No. 1915–98, 2000 WL 140257 (Tex. Crim. App. 2000), or *Cain v. State*, 958 S.W.2d 404 (Tex Crim. App. 1997), change this outcome. Therefore, I would reverse the conviction and respectfully dissent from this court's decision to do otherwise.