Kevin Wayne DAVY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–020–CR.

Court of Appeals of Texas, Waco.

Dec. 28, 2001.

Scala D. Byers, Garland, for appellant.

Bill Hill, Dallas County Criminal District Attorney, Anne B. Wetherholt, Dallas County Asst. District Attorney, Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

A jury convicted Kevin Wayne Davy of driving while intoxicated. The court assessed Davy's punishment at ninety days in jail and a $300 fine, suspended imposition of sentence, and placed him on community supervision for twenty-four months. Davy contends in five issues that: (1) the evidence does not support the jury's implied finding that the arresting officer had reasonable suspicion to stop his car; (2) the court's definition of the phrase "normal use of mental or physical faculties" in the charge is erroneous; (3) the court committed fundamental error by instructing the jury that the State needed to prove only reasonable suspicion to justify the officer's stop of Davy; and (4) the evidence is legally and factually insufficient to prove that he was intoxicated (two issues).

## BACKGROUND

Officer Terry Barber testified that Davy came to his attention in the early morning hours of February 5, 1998 when Davy's car pulled into the parking lot of a city park which had closed at midnight. According to Barber, Davy was "just driving around in circles in the parking lot." He testified that Davy did so four or five times. He decided to contact the driver "to see if there was a problem." As he approached, Davy exited the parking lot. Barber noted that Davy was driving at about twenty miles per hour on a street with a posted speed limit of thirty-five miles per hour. He observed that Davy's car "was extremely close to the curb." He stopped Davy to investigate.

Barber thought Davy appeared "confused" when he asked him for his license and proof of insurance. Davy fumbled through his wallet to locate the requested items. He stumbled and nearly fell when he got out of his car at Barber's request. He used his car to maintain his balance. Davy had no odor of an alcoholic beverage on his breath, but he was "definitely impaired." Barber asked Davy to perform a number of field sobriety tests which he was unable to successfully complete. Davy informed the officer that he had taken several prescription medications pursuant to his doctor's orders. Barber arrested him for DWI.

On cross-examination, Barber agreed that Davy remained in the proper lane of traffic and never hit the curb. He suggested that Davy was "weaving toward the curb" when he stopped him. Barber followed Davy for 100 to 150 feet from the park entrance before stopping him. He testified that there were no other cars in the area at the time. Though Barber had testified on direct examination that Davy had not reported any physical limitations which would affect his ability to perform the sobriety tests, he conceded on cross-examination that he had stated on the video made at the jail that Davy had told him of a leg problem while at the roadside. Barber did not receive his certification for field sobriety testing until after Davy's arrest.

At the jail, Davy repeated his poor performance on the sobriety tests while on video. He submitted to an intoxilyzer test which revealed that he had no alcohol in his system. Barber then contacted his supervisor to obtain permission to have a drug recognition evaluation ("DRE") conducted by an officer trained for this task. He obtained the requested approval, and an off-duty officer later joined him to conduct the DRE.

The DRE officer Thomas Bromley described the DRE process at length to the jury. In general terms, this evaluation involves: a discussion with the subject about his medical history; various physiological evaluations;[1] standard sobriety testing (Romberg test, walk-and-turn test, one-leg-stand test, and finger-nose touch test); an examination for any physical evidence of substance ingestion (e.g., powder in the nostrils or needle marks on the arms); an evaluation of the subject's muscle tone to determine whether he is relaxed or tense; and the taking of a blood or urine specimen to confirm the presence of a drug or controlled substance.

Davy informed Bromley that he had taken several prescription medications pursuant to his doctor's instructions. Bromley categorized all of these medications as depressants. He testified that Davy's performance in the DRE was consistent with that of a person under the influence of such medications. However, he conceded that many of Davy's "symptoms" could also be consistent with those of a person suffering from sleep deprivation. Some of his observations were inconsistent with what he would expect to find in a person under the influence of depressants.

An analysis of Davy's urine specimen confirmed the presence of the prescription medications which he told the officers he had taken. The laboratory analyst who tested Davy's specimen testified that Davy's medications "may not cause" intoxication in an individual who took them as prescribed and had been taking them "for some period of time." However, the analyst also agreed that these medications could cause the symptoms observed by the officers in Davy's case and could cause intoxication when taken "at therapeutic levels."

Davy testified in his own behalf. He denied that he drove in circles in the parking lot. According to Davy, he pulled into the parking lot, did a three-point turn, then drove the other way. He agreed that Barber promptly stopped him after he left the parking lot.

Davy has experienced severe migraine headaches since he was twelve. Despite

---

1. The physiological evaluations include: an examination for variances in the size of the subject's pupils which could indicate a head injury; testing for horizontal gaze nystagmus and vertical nystagmus; checking the pupils to see how they react to various degrees of light; and checking vital statistics at various intervals.

various prescribed pain medications during these years, he has not experienced appreciable relief until December 1998 when a physician prescribed sunglasses to protect his eyes, which are oversensitive to light. Davy has also suffered from insomnia for about fifteen years. He had slept only six hours in the five days preceding his arrest.

In Davy's opinion, his prescription medications did not affect his performance on the sobriety tests. He testified that he has a "bad leg" which caused him to perform poorly on the physical sobriety tests. He attributes the remainder of the intoxication-like symptoms which the officers observed to sleep deprivation.

## ARTICLE 38.23 INSTRUCTION

Davy contends in his first issue that the evidence does not support the jury's implied finding that Barber had reasonable suspicion to stop him. He alleges in his third issue that the court committed fundamental error by instructing the jury that the State needed to prove only reasonable suspicion to justify the stop.[2]

### THE INSTRUCTION

The court *sua sponte* submitted the following instruction to the jury under article 38.23.

You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

You are further instructed that an officer is permitted to make a temporary investigative detention of a defendant if the officer has a reasonable suspicion that some activity out of the ordinary is or has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense.

The law regarding minimum speed regulations states that an operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law.

Now, therefore, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that Officer T. Barber had a reasonable suspicion based on articulable facts to temporarily detain the Defendant, Kevin Wayne Davy, for a traffic violation, to-wit: driving so slowly as to impede the normal and reasonable movement of traffic you may proceed to consider whether or not the Defendant was driving while intoxicated; however, if you have a reasonable doubt thereof, then you will not consider the question of whether or not the Defendant was driving while intoxicated but enter a verdict of "not guilty" based upon no reasonable suspicion to detain.

### REASONABLE SUSPICION

Under *Terry v. Ohio,* a law enforcement agent has what has come to be known as "reasonable suspicion" to temporarily detain a suspect when the agent is aware of "specific and articulable facts, which, taken together with rational inferences from

2. Davy does not contend that Officer Barber lacked probable cause to arrest him based on his observations following the traffic stop. *E.g., Worley v. State,* 912 S.W.2d 869, 873 (Tex.App.—Fort Worth 1995, pet. ref'd) (officer developed probable cause for arrest after detention based on reasonable suspicion). Rather, his first and third issues focus on the propriety of the initial stop.

those facts, reasonably warrant [the] intrusion." 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App. 2000).

■ When a person is stopped on the basis of reasonable suspicion, then no Fourth Amendment violation has occurred because the seizure is by definition "reasonable." *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905 (Fourth Amendment prohibits "unreasonable searches and seizures"). Article 38.23(a) applies when an officer has seized evidence in violation of an accused's constitutional or statutory rights. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp. 2002). Accordingly, if Officer Barber had reasonable suspicion to stop Davy, then his "seizure" of Davy did not violate Davy's Fourth Amendment rights, and the evidence he acquired thereafter would not be excluded under article 38.23.

■ Davy contends in his third issue that the court's instruction should have required the jury to determine that Officer Barber had probable cause to stop him. Because "reasonable suspicion" is a constitutional justification for a warrantless stop, we disagree. Accordingly, we conclude that Davy's third issue is without merit. *See Reynolds v. State*, 967 S.W.2d 493, 494–95 (Tex.App.—Houston [1st Dist.] 1998), *aff'd*, 4 S.W.3d 13 (Tex.Crim.App. 1999) (approving trial court's article 38.23(a) instruction on reasonable suspicion).

## ARTICLE 38.23(a)

Article 38.23(a) of the Code of Criminal Procedure provides as follows:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a).

■ A defendant is entitled to a jury instruction under article 38.23(a) when a fact issue exists regarding the basis for an officer's (or other person's) seizure of evidence. *See Pierce v. State*, 32 S.W.3d 247, 251 (Tex.Crim.App.2000). In most DWI cases, this will arise when a dispute exists regarding the factual basis for the officer's stop of the defendant's car. Nevertheless, article 38.23(a) involves two inquiries: (1) the issue of whether a valid legal basis for the seizure exists, which is a question of law reserved for the trial court; and (2) the issue of whether the facts support this legal basis, which can be submitted to the jury under article 38.23(b) when the pertinent facts are contested. *Id.* If there is no dispute regarding the factual basis for the challenged seizure, then the trial court must resolve the legal question presented and a jury instruction is inappropriate. *Id.*

### LEGAL BASIS FOR STOP

#### Theories at Issue

The State's primary argument at trial and on appeal is that Officer Barber's initial stop of Davy was supported by reasonable suspicion. The State argued at trial that Officer Barber had reasonable suspicion that Davy was driving so slowly as to impede traffic and that he was driving while intoxicated. The court submitted

only the impeding traffic allegation in its article 38.23(a) instruction. The State argues on appeal that Officer Barber had reasonable suspicion to believe Davy was impeding traffic and that Officer Barber's observations justify the stop as an exercise of the community caretaking function. The State does not advance on appeal its trial theory that Officer Barber had reasonable suspicion that Davy was driving while intoxicated. An initial issue for our decision is which of these legal theories we may consider in addressing the propriety of the stop.

Settled law establishes that we must affirm a trial court's ruling if it is "correct on any theory of law applicable to the case." *Hughes v. State*, 24 S.W.3d 833, 840 n. 4 (Tex.Crim.App.2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). This is particularly true when we review issues regarding the admissibility of evidence. *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App.1997); *Romero*, 800 S.W.2d at 543. An article 38.23(a) jury instruction "relates to the admissibility of [the] evidence [seized]." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

Following this settled principle, Texas courts have determined that a trial court's ruling may be affirmed on a legal theory raised by the State for the first time on appeal. *See Boyle v. State*, 820 S.W.2d 122, 140–41 (Tex.Crim.App.1991) (op. on reh'g); *Wilson v. State*, 692 S.W.2d 661, 671 (Tex.Crim.App.1985) (op. on reh'g); *Lewis v. State*, 664 S.W.2d 345, 347 (Tex. Crim.App.1984); *Vasquez v. State*, 902 S.W.2d 627, 632 (Tex.App.—El Paso 1995), *rev'd on other grounds*, 919 S.W.2d 433 (Tex.Crim.App.1996); *Stephens v. State*, 834 S.W.2d 94, 96 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *State v. Williams*, 814 S.W.2d 256, 260 (Tex.App.-Austin

1991), *aff'd*, 832 S.W.2d 52 (Tex.Crim.App. 1992); *but see State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998) (State cannot assert new grounds on appeal when challenging adverse suppression ruling).

The First Court of Appeals has determined that the State can raise only the issue of standing for the first time on appeal. *See Stephens*, 834 S.W.2d at 96 (citing *Boyle*, 820 S.W.2d at 141; *Wilson*, 692 S.W.2d at 671).[3] Thus, the court later concluded that the State cannot raise a "totally different" theory on appeal. *Sedani v. State*, 848 S.W.2d 314, 319 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

The Court of Criminal Appeals has expressly held that the State may raise standing for the first time on appeal from a suppression ruling regardless of whether the seized evidence was suppressed. *See State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim.App.1996); *see also Flores v. State*, 871 S.W.2d 714, 720 n. 7 (Tex.Crim.App. 1993); *Wilson*, 692 S.W.2d at 671. While it is true that the Court of Criminal Appeals has so held, the Court has not limited the appellate principle that the State may assert new legal theories on appeal to the issue of standing. *See Boyle*, 820 S.W.2d at 140 (consent to search by third party); *see also Hughes v. State*, 878 S.W.2d 142, 151 (Tex.Crim.App.1993) (op. on reh'g) (addressing preservation issue raised for first time on rehearing); *McFarland v. State*, 845 S.W.2d 824, 835–36 (Tex.Crim.App.1992) (affirming admission of co-conspirator's testimony as statement against interest though proffered at trial under co-conspirator exception). Nor have the intermediate courts limited this principle to standing. *See Vasquez*, 902 S.W.2d at 632 (previously unasserted hearsay exception); *Williams*, 814 S.W.2d at

---

**3.** As we will discuss shortly however, the issue in *Boyle* was not standing.

260 (voluntariness of consent to blood test).

In *Mercado,* the Court of Criminal Appeals reviewed many of these decisions and differentiated between those cases in which the State is the appellant and those in which the State is the appellee. *See Mercado,* 972 S.W.2d at 77–78. The court concluded:

> Ordinary notions of procedural default should apply equally to the defendant and the State. Therefore we hold that *in cases in which the State is the party appealing,* the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense.

*Id.* at 78 (emphasis added) (citation omitted).

If the Court had desired to establish a black letter rule that the State cannot assert new legal theories on appeal regardless of whether it is appealing the trial court's decision or seeking to sustain it, it could have done so. The Court did not. Accordingly, we conclude that we may consider "alternative theories of law applicable to the facts of the case which *support* the trial court's decision." *Id.* at 77.

Therefore, we will consider each of the three legal theories advanced by the State at trial and/or on appeal in determining whether a constitutionally-permissible legal basis exists for Davy's stop.

### FACTUAL BASIS FOR STOP

### Standard of Review

■ In a case such as Davy's in which the primary proof of guilt is obtained as a result of a challenged stop, a guilty verdict "necessarily means" that the jury has found against the defendant on the contested fact issue regarding the basis for the stop. *See Pierce,* 32 S.W.3d at 253; *Coleman v. State,* 45 S.W.3d 175, 178 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In *Coleman,* the First Court of Appeals characterized such a verdict as an "implied finding that the search and seizure ... was not tainted by any illegality." *Coleman,* 45 S.W.3d at 178. The court then reviewed the record to determine whether this "implied finding" was supported by factually sufficient evidence. *Id.* at 178–79.

An implied finding under article 38.23 is similar to a deadly weapon finding made by a jury which finds an accused guilty as charged when the indictment alleges the use or exhibition of a deadly weapon.[4] *See Davis v. State,* 897 S.W.2d 791, 793 (Tex. Crim.App.1995); *Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App.1985); *Rachuig v. State,* 972 S.W.2d 170, 178 (Tex.App.—Waco 1998, pet. ref'd). Appellate courts frequently review the sufficiency of the evidence to support such findings. *See, e.g., McCain v. State,* 22 S.W.3d 497, 503 (Tex.Crim.App.2000); *Shugart v. State,* 32 S.W.3d 355, 359–61 (Tex.App.—Waco 2000, pet. ref'd).

■ We also note that intermediate courts of appeals in Texas are constitutionally empowered to review disputed fact issues in criminal cases. *See* TEX. CONST. art. V, § 6; *Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996); *see also* TEX.CODE CRIM. PROC. ANN. art. 44.25 (Vernon Supp.2002). "When [our] jurisdiction to review fact questions is properly invoked, [we] cannot ignore constitutional and statutory mandates." *Clewis,* 922 S.W.2d at 131. For these reasons, we

---

4. A notable difference is that an implied finding under article 38.23 is not a finding on an element of the offense (or on an issue which impacts the punishment to be assessed). *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

conclude that an implied finding under article 38.23 is reviewable under the traditional factual sufficiency analysis.[5] *Accord Coleman,* 45 S.W.3d at 178–79.

■ When presented with a challenge to the factual sufficiency of the evidence, we discard the prism of the light most favorable to the verdict.[6] *See Johnson v. State,* 23 S.W.3d 1, 6–7 (Tex.Crim. App.2000); *Clewis,* 922 S.W.2d at 129; *Coleman,* 45 S.W.3d at 178–79; *Perkins v. State,* 19 S.W.3d 854, 856 (Tex.App.—Waco 2000, pet. ref'd). We "set[ ] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson,* 23 S.W.3d at 7 (quoting *Clewis,* 922 S.W.2d at 129). This occurs when "the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.* at 11; *Perkins,* 19 S.W.3d at 856; *accord Coleman,* 45 S.W.3d at 179.

■ We conduct "a neutral review of all the evidence, both for and against the [verdict]." *Johnson,* 23 S.W.3d at 11; *accord Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *accord Coleman,* 45 S.W.3d at 178–79. We review the evidence tending to prove the contested issue, "and compare[ ] it with the evidence that tends to disprove that [issue]." *Johnson,* 23 S.W.3d at 7; *accord Santellan,* 939

S.W.2d at 164. We give appropriate deference to the jury's decision and do not substitute our judgment for theirs. *See Johnson,* 23 S.W.3d at 7; *accord Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997) *accord Coleman,* 45 S.W.3d at 179. We do not "set aside a jury verdict merely because [we] feel that a different result is more reasonable." *Clewis,* 922 S.W.2d at 135 (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986)); *accord Cain,* 958 S.W.2d at 407.

### Hypothetically Correct Charge

■ We conduct a factual sufficiency review by referencing a hypothetically correct jury charge. *See Westfall v. State,* 10 S.W.3d 85, 91 (Tex.App.—Waco 1999, no pet.); *Fitts v. State,* 982 S.W.2d 175, 187 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd); *see also Malik,* 953 S.W.2d at 240. Although the following listing is not exhaustive, such a charge: accurately states the law; is authorized by the indictment or information; does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and adequately describes the offense for which the accused is being tried. *Malik,* 953 S.W.2d at 240 & n. 5; *Westfall,* 10 S.W.3d at 91–92. In the context of article 38.23(a), a hypothetically correct jury charge should submit for the jury's resolution any disputed fact issues

---

**5.** The Court of Criminal Appeals made clear in *Malik* that such findings are not subject to a legal-sufficiency review. *See Malik,* 953 S.W.2d at 240. This makes sense because an appellate court considers even inadmissible evidence when reviewing a legal-sufficiency claim. *See Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991); *St. Clair v. State,* 26 S.W.3d 89, 100 (Tex.App.—Waco 2000, pet. ref'd).

**6.** This is the point at which appellate review of an "implied finding" under article 38.23 varies from review of a trial court's suppres-

sion ruling. In the latter case, we review such disputed fact issues "deferentially in a light favorable to the trial court's ruling." *Loserth v. State,* 963 S.W.2d 770, 773 (Tex. Crim.App.1998); *accord Vargas v. State,* 18 S.W.3d 247, 252 (Tex.App.—Waco 2000, pet. ref'd) (disputed fact issues are "viewed in the light *most* favorable to the trial court's ruling") (emphasis added); *see also Hunter v. State,* 955 S.W.2d 102, 104 n. 2 (Tex.Crim. App.1997) (resolving disputed fact issue in State's favor "given the trial court's ruling on the motion to suppress").

surrounding the challenged search or seizure which are raised by the evidence.

## Facts at Issue

 The State argued before the jury, based on Officer Barber's testimony, that Davy's stop was justified because Davy circled the parking lot five times then left the parking lot and drove near the edge of the road at fifteen miles-per-hour below the posted speed limit.[7] In the prosecutor's words, "What do you think any reasonable person is going to think having seen that? They are going to pull them over."

Davy's counsel countered that Officer Barber's testimony did not demonstrate reasonable suspicion that Davy was impeding traffic because there was no traffic in that location when Officer Barber stopped him. Counsel suggested that Officer Barber mentioned the alleged driving in circles only after he testified regarding the manner in which Davy drove in the roadway and characterized the officer's testimony as containing "inconsistencies" regarding the basis for the stop.[8] Davy's other counsel presented a similar argument. He characterized the officer's testimony regarding the parking lot as "excuse number two" for the stop.

The only disputed fact issue surrounding Davy's stop is whether he was driving in circles in the parking lot. The court did not submit this issue to the jury in the charge. Rather, the court asked the jury to decide whether Davy was "driving so slowly as to impede the normal and reasonable movement of traffic." Thus, the court failed to submit the only disputed fact issue regarding the basis for the stop to the jury.[9] Nevertheless, a hypothetically-correct instruction would have submitted this disputed issue to the jury. *See Malik*, 953 S.W.2d at 240; *Westfall*, 10 S.W.3d at 91–92.

## ANALYSIS

The State's primary argument at trial and on appeal is that Officer Barber's initial stop of Davy was supported by reasonable suspicion. The State argued at trial that Officer Barber had reasonable suspicion that Davy was driving so slowly as to impede traffic and that he was driving while intoxicated. The State argues on appeal that Officer Barber had reasonable suspicion to believe Davy was impeding traffic and that Officer Barber's observations justify the stop as an exercise of the community caretaking function.

## Impeding Traffic

 The State contends that Officer Barber had reasonable suspicion that Davy was operating his car in violation of section 545.363(a) of the Transportation Code. Section 545.363(a) prohibits the operator of a vehicle from driving "so slowly as to impede the normal and reasonable movement of traffic." TEX. TRANSP. CODE ANN.

---

7. The State also argued that, even if Davy did not circle the parking lot, Officer Barber had reasonable suspicion to stop him.

8. The record reflects, however, that Officer Barber began by testifying that he stopped Davy for an unspecified "traffic violation." He then described his observations in chronological order, beginning with Davy pulling into the parking lot, then driving in circles five times, then leaving the parking lot and driving down the road in the manner described. He concluded his testimony regarding the basis for the stop by stating that he stopped Davy because "[h]e was driving way below the speed limit."

9. If Davy's undisputedly slow speed were the only factual basis for the stop, it would have been incumbent upon the trial court to determine whether this justified the stop. *See Pierce v. State*, 32 S.W.3d 247, 251 (Tex.Crim. App.2000).

§ 545.363(a) (Vernon 1999). Accordingly, we must determine whether the record contains factually sufficient evidence that Officer Barber "had a reasonable suspicion that [Davy's] driving was an impediment to the normal and reasonable movement of traffic." *Richardson v. State*, 39 S.W.3d 634, 638 (Tex.App.—Amarillo 2000, no pet.).

The facts of *Richardson* are strikingly similar to those in Davy's case. The court concluded in *Richardson* that the officer did not have reasonable suspicion because "there was little or no traffic on the road for appellant to impede and what traffic there was, had no difficulty in passing." *Id.* at 639. Officer Barber testified that there were no other cars in the area when he stopped Davy. Accordingly, we conclude that the evidence that Officer Barber had reasonable suspicion to believe Davy was impeding traffic "is so obviously weak as to undermine confidence in the jury's [implied finding that he had reasonable suspicion]." *Johnson*, 23 S.W.3d at 11; *Perkins*, 19 S.W.3d at 856.

### Driving While Intoxicated

The State also argued at trial that Officer Barber had reasonable suspicion that Davy was driving while intoxicated. The pertinent factors relied on by Officer Barber included: (1) Davy entered the parking lot of a municipal park in the early morning hours, when the park was closed; (2) Davy drove his car in circles in the parking lot five times; and (3) when Davy returned to the road, he drove at nearly half the posted speed limit and close to the right edge of the road.

As noted above, we examine the totality of the circumstances to determine whether Officer Barber was aware of "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant[ed] [the stop]." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *Carmouche*, 10 S.W.3d at 328; *see also Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 695, 66 L.Ed.2d at 629 (describing totality-of-circumstances analysis); *Woods v. State*, 956 S.W.2d 33, 37–38 (Tex.Crim.App.1997) (same); *Veal v. State*, 28 S.W.3d 832, 836 (Tex.App.—Beaumont 2000, pet. ref'd) (same).

Texas courts have considered each of the facts noted by Officer Barber as pertinent to the issue of reasonable suspicion. *See Richardson*, 39 S.W.3d at 640 (slow driving); *State v. Tarvin*, 972 S.W.2d 910, 912 (Tex.App.-Waco 1998, pet. ref'd) (weaving within lane);[10] *Telshow v. State*, 964 S.W.2d 303, 305–06 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (early morning hour); *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex.App.—Tyler 1996, no pet.) (weaving inside lane); *Trent v. State*, 925 S.W.2d 130, 133–34 (Tex.App.—Waco 1996, no pet.) (performing "donuts" in parking lot); *Baeza v. State*, 804 S.W.2d 612, 614 (Tex. App.—El Paso 1991, pet. ref'd) (early morning hours).

However, none of these facts standing alone suffices to establish reasonable suspicion. *See, e.g., Richardson*, 39 S.W.3d at 640 (driving slowly standing alone does not establish reasonable suspicion); *Tarvin*, 972 S.W.2d at 912 (weaving within lane standing alone insufficient). Conversely though, when these facts are viewed collectively (*i.e.*, under the totality of the circumstances), they can suffice to establish reasonable suspicion. *See, e.g., Telshow*, 964 S.W.2d at 307; *Ortiz*, 930 S.W.2d at 856; *Trent*, 925 S.W.2d at 133–34; *Baeza*, 804 S.W.2d at 614.

In light of these authorities, we cannot say that the evidence that Officer Barber

---

10. We consider weaving within the lane similar to driving "near the edge" of the lane.

had reasonable suspicion to believe Davy was driving while intoxicated is "so obviously weak as to undermine confidence in the jury's [implied finding]." *Johnson*, 23 S.W.3d at 11; *Perkins*, 19 S.W.3d at 856. Thus, the State presented factually sufficient evidence on the issue of reasonable suspicion. Because of this determination, we need not address the State's alternative theory that Officer Barber's stop of Davy was constitutionally permissible as an exercise of the community caretaking function.

For these reasons, we conclude that Davy's first issue is without merit.

## NORMAL USE OF MENTAL OR PHYSICAL FACULTIES

■ Davy claims in his second issue that the court submitted an erroneous definition of the phrase "normal use of mental or physical faculties" in the charge. Under section 49.01(2)(A) of the Penal Code, a person is intoxicated if he does not have "the normal use of mental or physical faculties" because of the ingestion of alcohol or other substances. Tex. Pen.Code Ann. § 49.01(2)(A) (Vernon Supp.2002). The statute does not define the term "normal use."

The court instructed the jury in the charge that the term "[n]ormal use as used herein means the manner in which a normal non-intoxicated person would be able to use his mental or physical faculties." Davy argues that this definition lowered the State's burden of proof because the State had to prove that his own mental and physical faculties on the date in question were less than those which a "normal" person would possess. He contends that the State should have been required to prove that he had lost the normal use of the mental and physical faculties he usually possesses, taking into consideration his

history of insomnia and migraine headaches.

It appears that the court derived its definition from an opinion of the Dallas Court of Appeals. In that case, the appellant challenged the sufficiency of the evidence to prove that he had lost "the normal use of *his* mental and physical faculties" because the State produced no evidence of what his normal mental and physical faculties were. *See Massie v. State*, 744 S.W.2d 314, 315–16 (Tex.App.— Dallas 1988, pet. ref'd). The court rejected his challenge in the following language:

> We do not construe an allegation that appellant did not have normal use of his mental and physical faculties the same as an allegation that appellant did not have *his* normal use of his faculties. The former allegation does not require proof of the defendant's normal abilities. Rather, it means that the faculties which must be tested belong to appellant. If there was evidence that appellant could not use his faculties on the occasion in question, in the manner in which the normal non-intoxicated person would be able to use his faculties, the evidence is sufficient to convict him unless the jury finds that his inability to perform on that occasion is not due to intoxicants (*e.g.* diabetes; epilepsy).

*Id.* at 316.

The Austin Court of Appeals has affirmed a conviction in which the charge employed a similar definition. *See Atkins v. State*, 990 S.W.2d 763, 769 (Tex.App.— Austin 1999, pet. ref'd). However, the court did not specifically approve this particular definition. Rather, the court concluded, "*Taken as a whole*, the charge clearly states the proper statutory standards to be applied by the jury." *Id.* (emphasis added).

Recently, the Austin Court reversed a DWI conviction in which the court provid-

ed an extensive definition of the term "normal use." [11] *See Murphy v. State*, 44 S.W.3d 656, 661 (Tex.App.—Austin 2001, no pet. h.). The court noted that a term need not be defined in the charge if it is not statutorily defined. *Id.* at 662 (citing *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App.1996)). The court concluded that this definitional instruction was erroneous because it was "confusing, misleading, and a misstatement of the law." *Id.* at 664. The court held that this error required reversal because of the emphasis placed on the erroneous definition by the prosecutor in closing argument.[12] *Id.* at 665–66.

The *Massie* court recognized that a person may lack "normal" physical or mental faculties for reasons other than intoxication. *See Massie*, 744 S.W.2d at 316. Davy presented some evidence that he does not possess "normal" faculties because of insomnia and migraine headaches. The court's definition of "normal use" does not take Davy's evidence into account, nor does it acknowledge that a person may not possess objectively "normal" mental or physical faculties for reasons other than intoxication.

When we review a claim of charge error however, we examine the charge as a whole rather than reviewing each part in isolation. *See Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App.1995); *Escobar v. State*, 28 S.W.3d 767, 778 (Tex.

App.—Corpus Christi 2000, pet. ref'd); *Caldwell v. State*, 971 S.W.2d 663, 666 (Tex.App.—Dallas 1998, pet. ref'd). Davy contends essentially that the above-quoted definition permitted the jury to convict him if his poor performance on the sobriety tests was due to insomnia rather than the prescription medications he had taken. When we read the charge as a whole, we cannot agree.

The court specifically instructed the jury that a person is "intoxicated" under Texas law when he does not have "the normal use of mental or physical faculties *by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.*" Again in the application paragraph, the court instructed the jury that it could not convict Davy unless it found beyond a reasonable doubt that he "did not have the normal use of his mental or physical faculties *by reason of the introduction of a controlled substance, or a combination of two or more of those substances.*"

Because the court's charge did not permit the jury to convict unless it found beyond a reasonable doubt that the prescription medications caused Davy to lose the normal use of his faculties, we conclude that the charge as a whole properly instructed the jury on the law applicable to

---

11. The definition in *Murphy* read as follows:
 The term "normal use," means a normal non-intoxicated person. Whether or not the defendant had the normal use of his mental and physical faculties does not require proof of the defendant's normal abilities. Rather, it means that the faculties which must be tested belong to the defendant. You should consider if the defendant could use his faculties on the occasion in question in the manner in which the normal non-intoxicated person would be able to use his facilities.

*Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet. h.).

12. In *Murphy*, the State relied solely on the *Atkins* decision to support its assertion that the definition was proper. *Id.* at 662. The court noted that it did not expressly approve the "normal use" definition in *Atkins* and that the definition in *Atkins* was "a far cry from even the first sentence in the objected-to and questioned instruction in [*Murphy*]." *Id.* at 663.

DWI and properly applied the law to the facts of Davy's case. Thus, Davy's second issue is without merit.

### SUFFICIENCY OF EVIDENCE

Davy's fourth and fifth issues challenge the legal and factual sufficiency of the evidence to prove that he was intoxicated. We have already set out the standard of review for a factual sufficiency claim.

 In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *See Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *See Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

 Davy does not dispute that he performed poorly on the sobriety tests both at the side of the road and at the jail. He does not dispute that he had ingested prescription medications on the date in question. The jury was free to disbelieve his testimony that his performance on the sobriety tests was due to his lack of sleep and his "bad leg" rather than the medications. Accordingly, we conclude that the evidence is legally and factually sufficient to support the verdict. Thus, Davy's fourth and fifth issues are without merit.

We affirm the judgment.

Justice VANCE and Justice GRAY concurring.

VANCE, Justice, concurring.

I disagree with the analysis of the first issue. I do not believe that we should review the factual sufficiency of the evidence to support a jury's implied findings on an article 38.23 instruction. As I read *Malik v. State,* sufficiency reviews are reserved for elements of the offense. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim. App.1997) ("The legality of appellant's detention is not an element of the offense charged but merely relates to the admissibility of evidence."); *see also McGinn v. State,* 961 S.W.2d 161, 169 (Tex.Crim.App. 1998) ("We hold that a factual sufficiency review of a jury's determination [at the punishment phase of a capital case] of a probability of future dangerousness is not required by the Texas Constitution."). Thus, I disagree with the decision in *Coleman v. State,* 45 S.W.3d 175, 178 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).[1]

Shortly after the *Clewis* decision, in *Brumbalow v. State,* we recognized that a *Clewis*-type review of factual sufficiency is limited to the "elements of the offense" and declined to extend it to the factual basis underlying revocation of community supervision. *Brumbalow v. State,* 933 S.W.2d 298, 299–300 (Tex.App.—Waco 1996, pet. ref'd).

The foremost problem with such a review is: What is the remedy if we find the evidence factually insufficient to support the jury's implied finding on the article 38.23 instruction? The answer is easy if there is no other evidence on which the conviction might be based: reverse for a new trial. If, however, we disregarded the evidence in question on the article 38.23 instruction and found other evidence that

---

1. The Chief Justice distinguishes a factual sufficiency review from a *Malik*-prohibited legal sufficiency review partly on the basis that even inadmissible evidence is considered in a legal sufficiency review. I have found no case holding that inadmissible evidence is not considered in a factual sufficiency review. I believe that it should be considered.

is legally and factually sufficient to support the elements of the offense, do we reverse a valid conviction that is fully supported by competent evidence? I think not. I would rather not enter into the quagmire that review of such implied findings poses.

Because I otherwise agree with the Chief Justice, I concur in affirming the judgment.

GRAY, Justice, concurring.

The issue Davy wants us to address in this case is how we review the jury's determination of the admissibility of evidence when an Article 38.23 instruction to disregard illegally obtained evidence has been given. Davy's issue is worded as follows:

> The jury erred when it found beyond a reasonable doubt under the totality of the circumstances that the state had proved reasonable suspicion to detain appellant for a traffic violation and failed to acquit him.

Davy contends that the standard of review of a suppression issue decided by a jury is an issue of first impression. Davy relies on *Johnson,* a Dallas Court of Appeals decision, to raise the issue as an error of the jury, rather than of the trial court, in the admission and consideration of evidence. *Johnson v. State,* 885 S.W.2d 578, 581 (Tex.App.—Dallas 1994, no pet.). Davy states that he "... does not attack the trial court's ruling on the suppression issue because the jury's finding of reasonable suspicion [of a] traffic [offense] supplanted the trial court's ruling. This court reviews only the jury decision because it was the last determination of reasonable suspicion. [citing *Johnson*]" Appellant's Brief at page 30.

Four months after Davy filed his brief, the Court of Criminal Appeals flatly stated the holding in *Johnson* cannot be a correct general rule. *Pierce v. State,* 32 S.W.3d 247, 251 (Tex.Crim.App.2000). The Court

stated: "To hold that a jury's verdict returned under the statute's second sentence supplants the trial court's ruling made under the statute's first sentence would render unreviewable the court's decisions on questions of law. For this reason alone, the holding in *Johnson* cannot be a correct, general rule." *Id.* The Court went on: "The narrower holding of *Johnson,* that the jury's implied finding of fact supplants the trial court's finding of fact, is one we do not accept. The reasons have been developed in cases that deal with a related issue of evidence: confessions." *Id.*

The Court held:

> When a trial court has denied a motion to suppress evidence, the verdict of guilty from a jury that was charged to disregard illegally obtained evidence does not prevent the defendant from appealing the court's ruling. This was the procedure followed in another case that the court of appeals cited to support the opposite holding. It should be followed in this case.

*Id.* at 253. Thus, the proper issue is not about what the jury did. The jury cannot err. The jury's answer may not be supported by sufficient evidence, but it is the trial court that errs when it admits evidence obtained in violation of law. Davy must attack the trial court's determination of the admissibility of the evidence, not the jury's implied finding. *See Peterson v. State,* 727 S.W.2d 125, 126 (Tex.App.—San Antonio, no pet.). The procedure used in *Peterson* of reviewing the trial court's ruling on the motion to suppress, rather than reviewing the jury decision, was cited with approval in *Pierce. Pierce,* 32 S.W.3d at 253, fn. 15.

Davy specifically states that he is not attacking the trial court's evidentiary ruling refusing to suppress the evidence.

Because Davy complains only about the implied finding of the jury, issue one presents nothing for our review.

Accordingly, I concur in the result, but not the rationale of either the lead or concurring opinions on the resolution of issue one. I join the remainder of the lead opinion.