COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JAMES HENRY GELINAS, | | No. 08-09-00246-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070C04062) |
| | § | |

**O P I N I O N**

James Henry Gelinas was charged by information with the offense of driving while intoxicated, a Class-B misdemeanor. A jury found Appellant guilty and the trial court sentenced him to180 days in jail and a $1,000 fine. The trial court suspended the sentence and ordered fifteen months' community supervision. Gelinas appeals his conviction, bringing forward fifteen points of error. Finding his last issue to constitute reversible error, we reverse and remand.

**FACTUAL AND PROCEDURAL SUMMARY**

On February 17, 2007, Gelinas was arrested for driving while intoxicated. He filed a motion to suppress alleging no probable cause existed for the traffic stop. On October 31, 2008 and November 3, 2008, the trial court considered the motion.

**Motion to Suppress**

At the suppression hearing, the State called Trooper Marquez. Marquez testified that he is a Texas State Trooper, has been a certified peace officer since December 2002, and has been associated with law enforcement since June 2002 when he joined the academy in Austin. He testified to having multiple hours of training and experience including, "Texas law, criminal, patrol

procedures, weapons, defensive tactics, DWI enforcement, arrest--arrest and search procedures." Marquez previously observed intoxicated individuals and testified that his training teaches him to look for several clues or indicators that a person is impaired. He is trained in testing a person's sobriety, and identifies: (1) the horizontal gaze nystagmus (HGN) test; (2) one-leg walk-and-turn; and (3) the one-leg stand as three different types of standard field sobriety tests (SFSTs). The HGN requires an officer to look for involuntary jerking or movement of the eyes. Marquez testified he has observed these types of field sobriety tests performed on close to one hundred people.

On the night of February 16, 2007, at approximately 10 or 11 p.m., Trooper Marquez, while working routine patrol on FM 1281 (Horizon Boulevard), observed two things which caught his attention: (1) he noticed defendant exit the private driveway of a small shopping center and make a right turn onto Horizon Boulevard without signaling; and (2) when he passed the vehicle and looked in his mirror, "the lights in the back of the license plate lights were the wrong color," (the light was red instead of white). Marquez admitted he mistakenly thought that the failure to signal constituted a traffic violation. Acknowledging that while it used to be a traffic violation to fail to signal out of a private drive, he understood this is no longer the law.

Trooper Marquez initiated a traffic stop, believing (albeit incorrectly) that he had witnessed two traffic violations. Marquez made a U-turn, pulled up behind Appellant, and turned on his lights. The driver pulled the car over onto a small side street. Trooper Marquez approached the vehicle and identified the driver as Appellant. Appellant exited the vehicle upon request and Marquez noted he had bloodshot eyes, slurred speech, and smelled of alcohol. Appellant stated he was coming from a bar where he had been for sometime, and that he had drunk approximately four beers. Trooper Marquez then requested Appellant perform standardized-field-sobriety tests (SFSTs) and Appellant agreed. Marquez testified that he conducted the HGN, walk-and-turn, and one-leg stand tests on

Appellant. On the HGN test, Appellant displayed all six possible clues. Additionally, Appellant displayed three out of eight clues on the walk-and-turn test and three out of four clues on the one-leg test. Following these tests, Appellant was arrested for driving while intoxicated and advised of his *Miranda* rights. Marquez also read Appellant a DIC-24 form, and Appellant subsequently refused to submit to a breathalizer test. Trooper Marquez completed his paperwork and booked Appellant in El Paso County Jail.

On cross-examination, Trooper Marquez stated that at the time of the traffic stop, he believed Appellant's failure to signal out of the private driveway constituted a traffic violation. He also stopped the vehicle because of a red license plate light. After the traffic stop, Marquez noticed that there was also a white light illuminating the license plate.[1] At the time of the stop, he saw only the

---

[1] The line of questioning went as follows:

> Q. You make your U-turn, you started following him, you pulled him over, and there was a white light over that license plate, correct?
>
> A. No, not right there, It was after -- way after the traffic stop. I went underneath and I noticed there was a white light. But the illumination of the red light took over the --
>
> .     .     .
>
> Q. Sir, just answer my question. Okay? You had enough time when the DAs asked your questions so if you'll just answer my questions, I would appreciate the respect. Now, in fact, it was a white license plate light, correct?
>
> A. Yes, sir.
>
> Q. That illuminated that license plate, correct?
>
> A. Yes, sir.
>
> Q. And these -- when you said there was red lights illuminating, what you saw were tiny little lights on the license frame, right?
>
> A. Yes, sir. It was one.
>
> Q. One little, red light.
>
> A. It was about two inches -- two by one, I would estimate on that.

red light. A white light illuminating a license plate must be visible from at least fifty feet. The trial court denied the motion to suppress.

## Trial on the Merits

On June 2, 3, and 4, 2009, the case was tried to a jury. Officer Marquez testified that on February 16, 2007, he was in uniform, driving a marked patrol unit, and working routine patrol on FM 1281. Around midnight, Marquez spotted a Blazer/Bronco type vehicle make a right turn from a parking lot/private driveway onto FM 1281 without signaling. At the time Marquez mistakenly believed this was a traffic violation. As he passed the vehicle, Trooper Marquez also noticed a red light illuminated the license plate. Marquez turned around, activated his lights, and initiated a traffic stop of the vehicle.

Marquez approached the vehicle and identified the driver as Appellant. Appellant' eyes were bloodshot, his speech was slurred, and he smelled like alcohol. He also observed that Appellant's actions were slow when reaching for his license and insurance card. Appellant informed Trooper Marquez he'd come from a local nightclub where he'd consumed four beers. Trooper Marquez performed the HGN, the walk-and-turn, and the one-leg stand on Appellant. Marquez's patrol unit camera recorded the administration of the three SFSTs. On cross-examination, Marquez once again

---

Q. So there is nothing illegal, sir, about having a white license plate light, correct?

A. No, sir.

Q. In fact, that's legal?

A. Yes, sir.

Q. That's what you're supposed to have?

A. Yes, sir.

Q. Right? There's nothing illegal about having an additional little, red light, correct?

A. No, sir.

admitted Appellant did not commit a traffic violation in failing to signal out of the parking lot. With regard to the license plate light, he could not tell whether the light was "white"; he could only tell that it was "faint." The videotape of the traffic stop depicts a white light illuminating the license plate.

## CHARGE ERROR

In Issue Fifteen, Appellant complains of charge error. The trial court shall deliver a "written charge distinctly setting forth the law applicable to the case" to the jury. TEX.CODE CRIM.PROC. ANN. art. 36.14. In reviewing charge error, we must first determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007), *cert. denied*, 552 U.S. 1028, 128 S.Ct. 627, 169 L.Ed.2d 404 (2007). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id*.

Appellant complains that the trial court abused its discretion in failing to give the requested suppression instruction to the jury:

> If you the jury find that Trooper Diego Marquez illegally stopped the defendant on February 16, 2007, or have any reasonable doubt thereof, you are instructed to exclude all evidence obtained by the trooper from and after the illegal stop from -- during your deliberations.

The trial court agreed to give an instruction "on the business of the stop," and amended its charge to read as follows:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts, which, taken together with the rational inferences from those facts, lead him to conclude that a person detained actually is, has been, or soon will be engaged in criminal activity. Now, bearing in mind this instruction, **if you** find from the evidence that on the occasion in question the Defendant, JAMES HENRY GELINAS, was driving his vehicle on a public road immediately preceding his stop and detention by the officer and you **find from the evidence that his vehicle failed**

**to comply with the Texas Transportation Code Provision, which requires a white light to illuminate the vehicle's license plate or you have a reasonable doubt thereof, then such stopping of the accused would be illegal** and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard this testimony of Trooper Marquez relative to his stopping the defendant and his conclusions drawn as a result thereof, and you will not consider such evidence for any purpose whatsoever.

[Emphasis added.]

Appellant contends on appeal that after agreeing to submit the requested suppression charge, "which was substantially correct" the trial court instead "submitted a special charge which instructed the jury to do exactly the opposite of what [Appellant] had requested in his special charge." We agree.

The standard of review differs depending on whether Appellant made a timely objection at trial. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004). If the error was the subject of a timely objection, reversal is required if there is some harm to the defendant as a result of the error. *See* TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981); *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on rh'g). If no proper objection was made at trial, reversal is required only if the error is so egregious that the defendant was denied a fair and impartial trial. *See Ovalle*, 13 S.W.3d at 786; *Almanza*, 686 S.W.2d at 171. The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171.

Appellant did not object to the charge. A defendant is entitled to a jury instruction under Article 38.23(a) of the Code of Criminal Procedure when a fact issue exists regarding the basis for an officer's seizure of evidence. *See Davy v. State*, 67 S.W.3d 382, 388 (Tex.App.--Waco 2001, no

pet.), *citing Pierce v. State*, 32 S.W.3d 247, 251(Tex.Crim.App. 2000). When a fact issue is raised, regardless of the level to which it rises, the trial court is statutorily bound to submit an instruction to the jury. *See Jordan v. State*, 562 S.W.2d 472, 473 (Tex.Crim.App. 1978); *Reece v. State*, 878 S.W.2d 320, 324 (Tex.App.--Houston [1st Dist.] 1994, no pet.).

Here, the charge submitted was erroneous because it instructed the jury that if they believed Appellant had violated the Transportation Code, then the initial stop was illegal. *See* TEX.CODE CRIM.PROC.ANN. art. 38.23(a)(West 2005). The facts are remarkably similar to those in *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim.App. 1996). There, police officers stopped a vehicle in which Hutch was a passenger because neither he nor the driver was wearing a seat belt. As the officers approached, Hutch leaned forward and dropped an object on the floor which was later determined to be cocaine. At trial, Hutch testified that he and the driver were wearing their seat belts. Because his testimony contradicted the police officers, the trial judge instructed the jury that illegally obtained evidence is inadmissible. But the instruction there, like the instruction here, was absolutely backwards:

> [I]f you find from the evidence that . . . the driver and front seat passenger were *not* wearing seat belts . . . *then such stopping of the accused would be illegal.*

*Id.* at 169. A majority of the court of appeals determined that the charge was an incorrect statement of the law but found no egregious harm. Justice O'Connor dissented, finding that, "[i]t cannot be harmless error to instruct the jury that the law is the opposite of what it actually is." *Hutch v. State*, 881 S.W.2d 92, 96 (Tex.App.--Houston [1st Dist.], pet. granted)(O'Connor, J., dissenting).

The Court of Criminal Appeals granted the petition for review. The majority opinion begins by discussing the *Almanza* standard of harm, noting that "errors which result in egregious harm are those that affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally

affect a defensive theory.'" *Hutch*, 922 S.W.2d at 171, *citing Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App. 1985). The opinion explains that the instruction was unquestionably wrong and, "[a]s noted by Justice O'Connor, the instruction was 180 degrees opposite of what it should have been." *Hutch*, 922 S.W.2d at 172. The majority considered the *Almanza* factors for determining whether the error was egregious.

With regard to the first factor, the majority faulted the court of appeals for its determination that nothing in the record indicated that the jury misunderstood the law. This was wrong for two reasons. First, the court of appeals did not consider the appellate presumption that the jury is presumed to have understood and followed the charge absent evidence to the contrary. *Id.* Second, the error occurred in the application paragraph. Even though the charge otherwise gave a correct statement of the law, the instruction did not authorize the jury to consider or not consider the evidence obtained from the stop. *Id.* The authority to consider or not consider the evidence came solely from the erroneous application paragraph. *Id.* at 173.

The majority then addressed whether the charge error related to a contested issue. It faulted the court of appeals for considering whether the testimony was equivocal.

> This was erroneous. Under an *Almanza* analysis, there is no requirement that the testimony be equivocal; in fact parties often present unequivocal evidence to support their respective sides of the case. Instead, this factor asks if the jury charge error related to a contested issue. In the instant case, the issue was obviously contested, otherwise an instruction would not have been required. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986)(When a factual dispute arises as to whether the evidence was legally obtained, a charge on the issue is required.). In fact, the legality of the stop was the crux of appellant's case.

*Id.* at 173 (footnote omitted). Such is the case here.

We now consider the third factor--final arguments. Here, as in *Hutch*, both sides argued their respective positions. The State argued that the stop was legal while the defense argued that it was

not.  The *Hutch* majority quickly rejected the contention that legal arguments could cure charge error:

> The United States Supreme Court, when faced with the assertion that a prosecutor's argument on a presumption of innocence cures a jury charge deficient in that instruction, wrote 'arguments of counsel cannot substitute for instructions by the court.'  [Citation deleted].  And, we have similarly noted that 'jury argument is not a substitute for a proper jury charge.'

*Id.* at 173-74.  The majority then recognized that because the application paragraph was so flawed as to charge the jury on the opposite of what the law actually provides and because the legality of the stop was a hotly contested issue, the error could not be cured by jury arguments.  *Id.* at 174. Because the error vitally affected Hutch's defensive theory, the court reversed and remanded.

> The right to a trial by jury in criminal matters is among those fundamental rights guaranteed by our Constitutions.  In order to effectuate this valuable right, there is a minimal requirement that the instructions to the jury *not* be exactly opposite of what the law actually is.

*Id.*

The State suggests that because *Hutch* is a plurality opinion, we need not follow it.  That is certainly true.  But because we agree with the *Hutch* majority, we choose to follow it.  We sustain Issue 15 and reverse and remand to the trial court.  We need not address the remaining issues.


June 15, 2011
 

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)