Larry Patrick Coffman v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-140-CR

     LARRY PATRICK COFFMAN,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Court at Law No. 3
Collin County, Texas
Trial Court # 3-82724-9
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Larry Patrick Coffman was charged with the offense of driving while intoxicated. The jury
found him guilty. The court then sentenced him to 180 days in jail. Coffman appeals, bringing
one issue of factual insufficiency of the evidence. We affirm.
Law
      Coffman relies on our previous opinion in Perkins v. State for the proposition that because
the video taken of Coffman at the jail does not show Coffman to be intoxicated, the evidence is
factually insufficient. See Perkins v. State, 940 S.W.2d 365 (Tex. App.—Waco 1997) vacated
and remanded, 993 S.W.2d 116 (Tex. Crim. App. 1999). The case was remanded by the Court
of Criminal Appeals because we used the incorrect standard of review. See Perkins v. State, 993
S.W.2d 116 (Tex. Crim. App. 1999). On remand, we reached a different result. See Perkins v.
State, 19 S.W.3d 854 (Tex. App.—Waco 2000, pet. ref’d).
      When conducting a review of the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997). We then apply the standard of review set out by the Court of Criminal
Appeals in Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000). We ask “whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the [fact finder’s] determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.” Id. at 11;
see also Cain v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126
(Tex. Crim. App. 1996). In other words, evidence can be factually insufficient if (1) it is so weak
as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight
and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. The jury is the judge of
the credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
Facts
      During the early morning hours of April 11, 1998, in Princeton, Collin County, Texas, a
vehicle passed in front of reserve police officer Terry McCalpin. Although McCalpin did not
write it in his book-in report, the vehicle appeared to be speeding. As the vehicle passed by, he
noticed that the left tail-light was not working. McCalpin initiated a traffic stop of the vehicle at
about 1:45 in the morning. Coffman was driving the vehicle. McCalpin retrieved Coffman’s
driver’s license. The roadway was narrow with no shoulder, however Coffman safely pulled over. 
When speaking to Coffman, McCalpin could smell the odor of an alcoholic beverage coming from
his breath. McCalpin also detected slurred or slowed speech.
      Coffman was asked to get out of the vehicle. At some point, Coffman relayed to McCalpin
that he had arthritis, asthma, and high blood pressure. McCalpin conducted some field sobriety
tests. He first conducted the Horizontal Gaze Nystagmus test. Although McCalpin did not recall
counting all the “clues” present in Coffman’s eyes, he noted that Coffman had a distinct
nystagmus, or jerkiness, in each eye. This indicated to McCalpin that Coffman had either been
drinking alcoholic beverages or taking drugs. Coffman had more nystagmus in his right eye than
in his left eye. Because it was dark at the time of the stop, McCalpin left some of his vehicle
lights on during the stop. The lights could have distracted Coffman but did not contribute to his
nystagmus. During trial, McCalpin demonstrated the test on the prosecutor. He noted some
nystagmus in her eyes, but explained that when someone has been drinking an alcoholic beverage,
the nystagmus is more distinct. The State introduced a video showing the jury what a distinct
nystagmus looks like.
      After the HGN test, Coffman admitted that he had been drinking all day and had drank ten
beers. McCalpin approached the passenger who told him that she, too, had been drinking. She
was later arrested for public intoxication. He then went back to Coffman to administer the nose-touch test. McCalpin orally gave instructions and then demonstrated this test for Coffman. 
Coffman attempted the test but could never touch the end of his nose with the end of his finger as
instructed. This indicated to McCalpin that Coffman did not have the ability to continue driving
his vehicle. The walk-and-turn test was not administered due to the uneven condition of the
roadway where Coffman was stopped. McCalpin ultimately concluded Coffman was intoxicated
and placed him under arrest. The back-up officer, Chris Lowe, arrived as Coffman was arrested. 
In speaking with Coffman in the patrol car, he noticed Coffman’s slurred speech.
      McCalpin took Coffman to the Collin County Jail at about 2:33 a.m. He conducted a video
interview where he read Coffman his rights and gave him the opportunity to take a breath test. 
Coffman refused. Coffman was cooperative throughout the stop and book-in procedures. This
video was introduced into evidence. The time recorded on the video was incorrect. McCalpin
recalled that he made the initial stop at 1:45 a.m, conducted the video interview, and actually
booked Coffman into jail at 3:30 a.m. The time on the video indicates it was recorded at 1:45
a.m. McCalpin agreed that Coffman looked different on the video than what he had explained
previously. He believed Coffman performed additional sobriety tests adequately on the video. 
He attributed that to the approximately one hour between the stop and the making of the video and
to the fact that people often “get their faculties a little bit more together” once arrested. 
Coffman’s performance on the video did not change McCalpin’s conclusion that he was intoxicated
when initially stopped.
      During standard book-in procedures, Coffman was asked about his use of alcohol. Coffman
replied that he drank almost a 12-pack of beer weekly. After booking Coffman into jail, McCalpin
finished the inventory of what Coffman had in his possession when arrested. The inventory
included a large sum of cash, a watch, a wallet, some keys, a pocket knife, a beeper, a check for
a large amount of money, two prescription drugs and some epinephrine mist. Coffman’s vehicle
had previously been inventoried. Tools, baseball equipment, and cash were found in it.
Application
      After reviewing all of the evidence, we do not find it so weak as to be clearly wrong and
manifestly unjust or that the adverse finding is against the great weight and preponderance of the
available evidence. Coffman’s sole issue is overruled.
Conclusion
      Having overruled Coffman’s sole issue for review, the trial court’s judgment is affirmed.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed April 11, 2001
Do not publish