COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-204-CR
 
JOSE VENTURA RODRIGUEZ                                                  APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
I. Introduction
        A jury convicted Appellant Jose Ventura Rodriguez of driving while 
intoxicated (“DWI”), and the trial court sentenced him to 120 days in jail, 
probated for twenty-four months, and assessed a $750 fine. On appeal, 
Appellant raises one point, challenging the factual sufficiency of the evidence 
to support his conviction. We will affirm. 
II. Factual Background
        On November 6, 1999, at approximately 7:00 p.m., Appellant was 
involved in a traffic accident with Virginia Jones at the intersection of 
University Drive and Jacksboro Highway in Fort Worth, Texas. During his trial, 
the State called Jones and Officer Greg Jones, who responded to the scene and 
arrested Appellant. The State also played a portion of a videotape from the jail, 
which depicted the police reading Appellant his statutory DWI warning and 
Appellant’s refusal to submit a breath sample. The defense called one expert 
witness, Leo Luebbehusen, who testified about the horizontal gaze nystagmus 
(“HGN”) test administered by Officer Jones. 
        Jones testified that, as she attempted to cross the intersection at a green 
light, she was struck by a pickup truck. After the accident, Jones observed 
that the pickup truck’s headlights were not lit, even though it was dark outside. 
The driver of the pickup, whom Jones identified as “short and dark-haired and 
Spanish,” approached Jones to make sure she was okay. Jones testified that 
“his breath smelled real bad . . . with alcohol.” A woman, who was walking 
down the street, also approached Jones to see if she could help, and Jones 
asked her to call an ambulance and the police. During trial, Jones was unable 
to identify Appellant as the driver because she only saw him briefly at her 
window before an ambulance took her to the hospital. 
        Officer Greg Jones was dispatched to the scene of the accident at 7:01 
p.m., and he arrived at 7:07 p.m. At trial, Officer Jones identified Appellant as 
the driver he spoke with at the scene of the accident. In speaking with 
Appellant, Officer Jones observed that Appellant’s eyes were watery and 
bloodshot. Additionally, Officer Jones “smelled the odor of alcohol on 
[Appellant’s] breath and on his person.” Appellant told Officer Jones that he 
had had “one beer.” Because Officer Jones understood that ambulance 
personnel had already spoken with both drivers and because Appellant did not 
complain of any injuries, Officer Jones began to test Appellant to determine if 
he was intoxicated. 
        Officer Jones administered the HGN test, the walk-and-turn test, and the 
one-leg stand test on Appellant. Officer Jones testified that during the HGN 
test, both of Appellant’s “eyes did jerk and . . . did not pursue smoothly,” 
which indicated that a stimulus, like alcohol or drugs, was in his body. Officer 
Jones then looked for nystagmus in the eye “when it’s moved as far as possible 
to the left to maximum deviation,” but he testified that Appellant did not exhibit 
any clues of possible intoxication during this part of the test in either his left or 
right eye. 
        Officer Jones testified that he then tested Appellant for nystagmus in the 
eyes before forty-five degrees and that Appellant “show[ed] clues in both the 
left and right [eye] by jerking.” Officer Jones did not test for vertical 
nystagmus. He also did not check for equal pupil size or for equal tracking, but 
he did not notice anything abnormal about Appellant’s pupil size. 
        After giving the HGN test, Officer Jones instructed and demonstrated to 
Appellant the walk-and-turn test. When asked, Appellant told Officer Jones 
that he understood the officer’s instructions. According to Officer Jones, 
Appellant exhibited six clues of possible intoxication while performing the test. 
Appellant was unable to keep his balance while listening to the instructions, 
was unable to touch heel to toe as instructed, had to stop while walking to 
steady himself, lost his balance while walking and turning, used his arms for 
balance, and failed to turn in the manner he was instructed. In fact, instead of 
turning around, Appellant walked the last nine steps of the test backwards. 
        Next, Officer Jones gave Appellant instructions and a demonstration of 
the one-leg stand evaluation. Officer Jones testified that Appellant exhibited 
four clues during the test: he swayed by balancing, put his foot down, put his 
foot down more than three times, and used his arms to balance himself. No 
nose touch test, counting, or recitation of the alphabet was required of 
Appellant because these are not standardized tests, according to Officer Jones. 
        After all three tests were administered, Officer Jones determined that 
Appellant was under the influence of alcohol and arrested him for DWI. Officer 
Jones testified that when Appellant was being arrested, Appellant said, “Just 
because I’m drunk doesn’t mean I was the cause of the accident.” Also, 
Officer Jones saw two broken beer bottles and one that was neither broken nor 
open inside of Appellant’s vehicle. Officer Jones testified that, based on 
everything he observed at the accident site, he concluded that Appellant was 
intoxicated, having lost the normal use of his mental and physical faculties. 
Officer Jones testified that Appellant was taken to jail, where Appellant refused 
to give a sample of his breath to the police. 
        Appellant’s sole witness was Leo Luebbehusen, a local criminal defense 
attorney, who testified as an expert witness on DWI HGN field sobriety testing. 
He testified about screening persons before administering the HGN test and 
checking for different sized pupils, and he opined that skipping some of the 
steps for the HGN evaluation compromises the test’s validity. On cross-examination, Luebbehusen agreed that, despite his training on HGN tests, he 
had never made a DWI stop or a DWI arrest. Luebbehusen also testified that 
he was not present at the accident scene and had not read the accident report. 
Luebbehusen later agreed that if he was not present at a specific location, he 
would not be able to determine whether the test was done correctly. Further, 
Luebbehusen testified that he could not testify about what was done in any 
specific case and that he did not know any of the facts in this case. 
III. Standard of Review
        In his sole point, Appellant complains that the evidence presented at trial 
is factually insufficient to sustain his conviction. Factual sufficiency review 
begins with the assumption that the evidence is legally sufficient. See 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). In reviewing 
the factual sufficiency of the evidence to support a conviction, we are to view 
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 
S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129, 
134 (Tex. Crim. App. 1996). Evidence is factually insufficient if it is so weak 
as to be clearly wrong and manifestly unjust or the adverse finding is against 
the great weight and preponderance of the available evidence. Johnson, 23 
S.W.3d at 11. A proper factual sufficiency review must include a discussion 
of the most important and relevant evidence that supports the appellant’s 
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 
2003).
IV. Application of Law to the Facts
        Appellant argues that despite Officer Jones’s testimony that Appellant 
was intoxicated, “a reasoned and impartial viewing of the tape [from the 
intoxilyzer room] dispels the theory that [Appellant] had lost the normal use of 
his faculties.” He argues that the videotape “directly contradicts” Officer 
Jones’s testimony, which tended to show his guilt. In support of his argument, 
Appellant points out that the tape does not demonstrate that his speech was 
slurred, that he had any trouble with walking or balancing, or that he smelled 
of alcohol. As such, Appellant maintains that the State’s evidence is “fatally 
weak.” See Johnson, 23 S.W.3d at 11. We disagree. 
        The videotape is brief and shows Appellant walk into the intoxilyzer room 
at 8:18 p.m. and stand on a black X on the floor, while Officer Jones reads him 
his statutory warning. Thus, the videotape was made over an hour and twenty 
minutes after Appellant ran into Jones’s car. On the tape, Appellant orally and 
in writing refuses to submit a breath sample to the police. 
 

 Officer Jones left 
the room after reading the warning to Appellant. Officer Jones agreed on
cross-examination that he never said that the videotape depicts Appellant
swaying, staggering, or needing support. On re-direct, however, Officer Jones
testified that he did not see any standard field sobriety tests performed on
Appellant in the video. 
        We have carefully reviewed the entire record, which contains ample 
evidence that Appellant had lost the normal use of his mental and physical 
faculties. Appellant was driving without his lights on at night and ran into 
another vehicle. As the accident was being investigated, Appellant told Officer 
Jones that he had had “one beer” and stated that he was “drunk.” Officer 
Jones found three beer bottles in Appellant’s vehicle. In addition to performing 
poorly on the field sobriety tests administered by Officer Jones, Appellant 
refused to submit a breath sample. 
        Based on our review of the testimony and the videotape, giving due 
deference to the fact finder’s determinations, we cannot say that the proof of 
guilt in this case is so obviously weak as to undermine confidence in the jury’s 
determination that Appellant was intoxicated, or that proof of Appellant’s guilt 
is greatly outweighed by contrary proof. See id.; see also Perkins v. State, 19 
S.W.3d 854, 858 (Tex. App.—Waco 2000, pet. ref’d) (holding evidence 
factually sufficient to support DWI conviction where DWI videotape and 
defense witness testimony contradicted the State’s witnesses). Accordingly, 
we overrule Appellant’s sole point. 
 
V. Conclusion 
        Having overruled Appellant’s sole point, we affirm the trial court’s 
judgment.
                                                          PER CURIAM 
 
PANEL F:   GARDNER, J.; CAYCE, C.J.; and WALKER, J. 
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 18, 2003